UNITED STATES of America,
Plaintiff-Appellee,

v.

James HUNT, Defendant-Appellant.

No. 76–2069.

United States Court of Appeals,
Ninth Circuit.

Jan. 6, 1977.

Rehearing Denied Feb. 2, 1977.

Dennis P. Riordan (argued), of Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen, Inc., San Francisco, Cal., for defendant-appellant.

Dennis Nerney, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and SNEED, Circuit Judges, and RICHEY,* District Judge.

SNEED, Circuit Judge (dissenting):

I cannot agree with the court's memorandum decision set out in the margin.[1] Its holding that the admission of twelve packets of heroin disclosed by an allegedly ille-

---

* Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation.

1. "Appellant was convicted of conspiring to import heroin, importation of heroin, and possession of heroin with intent to distribute. He argues that the district court erroneously admitted into evidence a quantity of heroin discovered during an illegal search of his automobile. The admission of the contraband, if error, was harmless. We therefore affirm without considering the legality of the search.

Evidence untainted by the search of appellant's automobile established overwhelmingly that appellant was the prime actor in a scheme to import a large quantity of heroin into the United States. This independent evidence established the following facts.

Appellant and Adina Bartholomew traveled to Hong Kong, and there met with a Mr. Ramesh. Ramesh gave Adina his bank book with his Hong Kong telephone number written on the back, and fifteen deposit slips. On January 2, 1975, with appellant present, Adina made three telephone calls from her Oakland apartment to Ramesh in Hong Kong. Appellant

returned to Hong Kong in mid-January of 1975 and acquired about thirteen pounds of heroin. Appellant then purchased a set of Noritake china in a Hong Kong department store. The china was packed in layers in a cardboard box. Appellant removed one of the layers, consisting of eight plates, inserted a false bottom, concealed the heroin beneath the false bottom, sealed the package, and addressed it to Vanee Johnson in San Leandro, California. Vanee Johnson was the maiden name of Adina's sister-in-law, Vanee Bartholomew. Before leaving Hong Kong, appellant mailed a letter to "Vanee Johnson" telling her to expect a shipment of dishes. He signed the letter "Barbara."

The San Francisco office of the Drug Enforcement Administration was informed that appellant had purchased a quantity of heroin and planned to ship it into the United States concealed in a box of china. The agency warned Hawaii customs officials of appellant's impending reentry and alerted San Francisco airport customs officials to intercept the box of china. When appellant went through customs in Honolulu he declared the eight dishes he had removed from the box, and showed a receipt

gal search did not contribute to appellant's conviction does not conform to the spirit of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). I am not convinced beyond a reasonable doubt that the admission of this evidence was harmless error. Therefore, I must dissent.

In *Chapman v. California, supra,* the Court adopted the strict test for determining harmless error announced in *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963): " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman v. California, supra* at 23, 87 S.Ct. at 827, quoting *Fahy v. Connecticut, supra* at 86–87, 84 S.Ct. 229. Rephrased, before a court may hold a federal constitutional error harmless, it must find that beyond a reasonable doubt the error complained of did not contribute to the verdict. Recognizing the dangers of looking primarily at the overwhelming evidence supportive of the verdict, the Court refused to adopt such an approach.

The later decision of *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23

---

for the remainder of the set. The box of china arrived at San Francisco airport on January 23. Customs agents opened it and discovered 399 packets of heroin. Most of the packets were removed and sent to a laboratory for analysis. Twelve packets were replaced in the box with approximately 250 packets of a look-alike substance. All packets were dusted with fluorescent powder. The agents covered the packets with the false bottom, and checked the interior of the box with a black light to insure that none of the powder had escaped. They then repacked the china and resealed the box.

Appellant's letter to Vanee regarding the shipment arrived January 20. The next day Vanee and Adina drove to San Francisco airport and inquired about the package. The customs agent told them it had not arrived. Vanee gave the agent her name and Adina's Oakland address and phone number. Adina's apartment was placed under surveillance. On January 24 Vanee was notified the package had arrived, and Adina informed appellant. That afternoon Vanee and Adina drove to the airport and picked up the package. Agents followed them back to Adina's apartment. They left the box in the car and entered the apartment. Appellant arrived ten minutes later. He entered the apartment, emerged in a few minutes, removed the box from Vanee's car, and carried it inside. He took the box to Adina's bedroom and remained there with it for between five and ten minutes. Appellant then left the apartment, carrying a paper bag. He placed the bag in the trunk of his car, and returned to the apartment.

The surveilling agents obtained a search warrant and entered Adina's apartment. The box had been opened and the heroin removed. It could not be found in the apartment. The agents found the false bottom of the china box. They also found Ramesh's bank book with the fifteen blank deposit slips, a sealing compound commonly used to seal heroin in plastic bags, and a quantity of mannite, a substance used to cut heroin. A black-light search revealed concentrations of fluorescent powder in the bedroom where the box had been opened, on the hands and clothing of the occupants of the apartment, and on the exterior of the trunk of appellant's automobile. The agents then conducted the warrantless search of the car—the search to which appellant objects. The twelve packets of heroin and 200-odd packets of substitute were found in a paper bag in the trunk.

We are convinced beyond a reasonable doubt that the twelve packets of heroin disclosed by the search did not contribute to appellant's conviction; the independent, untainted evidence of guilt was overwhelming. *Chapman v. California,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

Direct evidence established appellant as the moving figure in the importation scheme before the shipment was intercepted at the airport and the contraband discovered. Proof of the subsequent events confirmed his guilt. Appellant arrived at Adina's apartment shortly after the contraband and immediately asserted control over it. The testimony of the Bartholomews indicated that appellant removed the contraband from the box, and that he owned the sealing compound and the mannite. The black-light search established that appellant had handled the heroin. The admission into evidence of the results of the search fixed the precise physical location of the twelve packets of heroin, and tended to confirm appellant's earlier possession of it. But appellant's possession of the twelve packets was already established by virtually inescapable inference from the testimony of the Bartholomews, the visual observations of the surveilling agents, and the presence of the fluorescent powder on appellant's hands and on the trunk of the car. Any prejudice resulting from the introduction of the twelve packets was de minimis in view of the testimony, stipulations, and photographs fully exposing to the jury the earlier discovery of the 399 packets of heroin, including these twelve, during the search at the airport—an event wholly unaffected by the later search of the automobile.

Affirmed."

L.Ed.2d 284 (1969), in the Supreme Court's own words, did not "depart from" nor "dilute . . . by inference" the *Chapman* holding. *Id.* at 254. In *Harrington*, the Court held that the evidence was "so overwhelming" that the error complained of was harmless beyond a reasonable doubt. The Court repeated, however, its earlier admonition against giving undue emphasis to "overwhelming" evidence. Only when the Government's evidence so overwhelmingly supports the verdict that the tainted evidence becomes relatively insignificant does the admission of such evidence not contribute to the conviction. *See United States v. Steed*, 465 F.2d 1310, 1318–19 (9th Cir.), *cert. denied*, 409 U.S. 1078, 93 S.Ct. 697, 34 L.Ed.2d 667 (1972).

I cannot accept the conclusion that the evidence against the appellant is so overwhelming as to make the introduction of thirteen and one-half pounds of heroin and heroin substitute insignificant and not contributory to the conviction. That the evidence, other than the heroin and heroin substitute, is strong is acknowledged; that it is sufficient to support a verdict of guilty unaided by the "favorable light" required to be shed by *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941), is readily admitted; but I cannot accept that there is no reasonable possibility that the heroin and heroin substitute contributed to the appellant's conviction.

Without this evidence, the case against the appellant would have rested on less strong circumstantial evidence. There was no direct evidence of appellant's purchase of the heroin in Hong Kong and his shipment of it to the United States in the box of china. The fact that the heroin was shipped to the United States in a box of china which was shipped by the appellant is, of course, strong circumstantial evidence that the appellant shipped the heroin; but its strength is increased very substantially when the heroin and heroin substitute discovered in appellant's car is placed in evidence. I cannot say that the introduction of this evidence reasonably could not have influenced a juryman to abandon any belief in the appellant's innocence which he previously might have had. Without the evidence taken from appellant's car, and considering the fact that no one saw the appellant remove the heroin and heroin substitute from the box of china, a reasonable juryman could have insisted that the proof did not establish the appellant's guilt beyond a reasonable doubt. In any event, I cannot bring myself to believe that there is no reasonable possibility that such a juryman could have existed in this case.

My disbelief is strengthened by the fact the jury acquitted Vanee Johnson Bartholomew and Louis Bartholomew and was unable to reach a verdict as to Adina Bartholomew notwithstanding the strong circumstantial evidence of their guilt. None of the Bartholomews were found with heroin and heroin substitute in their possession or control. None were convicted despite the fact that Adina traveled to Hong Kong where she met with Ramesh; that she called Ramesh three times; that she had Ramesh's bank book and deposit slips; that she accompanied Vanee to pick up the heroin; that she took the box to her apartment; and, that she was found there with large quantities of the fluorescent powder on her hands.

My argument against the use of the harmless error doctrine in this case would rest at this point were it not for the fact that the appellant waived jury trial. The waiver and submission of his case to the trial judge who had denied his motion to suppress requires additional comment. The record clearly indicates that appellant's counsel founded his case on suppression of the heroin and heroin substitute. When he failed to achieve suppression counsel realized that his client's last hope was to receive mercy from the trial judge. To this end appellant waived his right to a jury trial and placed himself before the court which found him guilty on the basis of the record of the suppression hearing and the trial of the Bartholomews.

By doing this, the appellant did not agree to treat the failure to suppress as harmless

error. This failure remained, so far as the appellant and his counsel were concerned, *the* fundamental error in the case. It remains the basis of the appellant's appeal. It is pure speculation to believe that the appellant would have waived a jury trial had the heroin and heroin substitute been suppressed or that a jury would have convicted him on all three counts under those circumstances. It is somewhat less speculative to believe that, if the heroin and heroin substitute had been suppressed *and* if a jury trial had been waived, the trial judge would have found the appellant guilty. Nonetheless, I believe it impossible for us to know, with the degree of certainty that *Chapman* requires, what the course of events would have been had the appellant's motion to suppress been successful. Therefore, I dissent from the majority's use of the harmless error doctrine to avoid confronting the legality of the search of appellant's car.

My position requires such a confrontation. The problem is that the trial judge made no finding that exigent circumstances existed which would justify the warrantless search. Such a finding is necessary. *See Coolidge v. New Hampshire*, 403 U.S. 443, 461–62, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). I would remand this case to the trial judge for the limited purpose of determining whether such circumstances existed. If they did, appellant's conviction should be affirmed. If not, it should be reversed. In no event under the facts of this case should it be said that a failure to suppress, even if improper, is harmless error.