UNITED STATES of America, Appellee,

v.

Leonard Joel DUBROFSKY, Appellant.

No. 77–3738.

United States Court of Appeals,
Ninth Circuit.

Aug. 9, 1978.

Rehearing Denied Aug. 31, 1978.

Christopher Jon Cole (argued), San Francisco, Cal., for appellant.

Robert Dondero, Atty. (argued), San Francisco, Cal., for appellee.

Before KILKENNY, TRASK and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Leonard Dubrofsky was convicted of importing heroin in violation of 21 U.S.C. § 952 and possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and sentenced to a 15-year prison term for each violation, each term to run consecutively. He brings this appeal, challenging the use of an electronic tracking device, the admission of evidence from two searches, and several aspects of the sentencing decision. We affirm the conviction.

## I.

### *Facts.*

On May 13, 1977, a package mailed from Thailand addressed to "Francis Schneider, P.O.B. 276, Brookdale, California, 95007 U.S.A." arrived at the San Francisco Airport Customs Air Mail Facility. A lawful customs search revealed ten plastic bags containing heroin in the hollowed out walls of the package. On May 16 agents of the Drug Enforcement Administration removed these bags and replaced them with six bags of white powder and two bags of heroin. In addition, electronic surveillance devices were placed inside the parcel. These devices emitted beeping signals that allowed agents to follow the parcel. The beep changed tone if the parcel was opened.

The package was resealed and sent to the post office for a controlled delivery. On May 17 Dubrofsky picked up the parcel and drove to the residence of Ms. Cheryl Lovejoy in Santa Cruz. He was followed by federal agents and local police.

Soon after Dubrofsky entered Lovejoy's house the beeper changed tones, indicating that the package had been opened. Six or seven officers approached the residence and requested entry. Ms. Lovejoy admitted them, was informed of their purpose, and indicated that Dubrofsky was in the basement. The agents went there and discovered that the basement was locked from the outside. They obtained the combination from Ms. Lovejoy, opened the door, and ordered Dubrofsky to come out. Dubrofsky obeyed and was arrested.

After the arrest, Ms. Lovejoy was informed that she was a suspect in the investigation. She was given a *Miranda* warning, and her consent was requested to search the basement. Although a written consent was apparently given after the search, evidence at the suppression hearing indicates that Ms. Lovejoy gave a valid oral consent prior to the search. The package, heroin, heroin substitute, and the beepers were found in the basement.

Later that day a warrant was obtained to search Dubrofsky's home in Boulder Creek. The warrant was issued in San Francisco and telephonically relayed to an agent waiting at Dubrofsky's home. The agent performing the search never saw the warrant nor was informed of the specific items authorized to be seized. A passport, an alien registration card, a small amount of heroin, narcotics paraphernalia, a phone bill, a plane ticket, and a loan document were discovered in the search.

## II.

### *Installation and Use of the Electronic Surveillance Devices.*

Dubrofsky contends that the installation and subsequent use of the electronic surveillance devices was a search falling within the Fourth Amendment's protections. We disagree.

A two-step analysis is required for problems presented by the use of electronic surveillance devices in law enforcement activities. First, it must be determined if the Fourth Amendment was violated when the device was installed. *United States v. Pretzinger,* 542 F.2d 517, 520 (9th Cir. 1976) (per curiam). If installation of the device was proper, the court must then determine if the continued surveillance by the device violates a reasonable expectation of privacy. *United States v. Hufford,* 539 F.2d 32 (9th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ There is no question that the initial opening of the package by customs agents was lawful. Customs officials are authorized to inspect incoming international mail when they have a "reasonable cause to suspect" that the mail contains contraband. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). "Reasonable cause to suspect" is a considerably milder standard than probable cause. 431 U.S. at 612–13, 97 S.Ct. 1972. Substantial quantities of narcotics are imported into the United States from Thailand, and it is reasonable to suspect that a crated package like the one in controversy contains contraband. Therefore, the package was lawfully opened, and the mere insertion of the devices did not violate any Fourth Amendment right. Such rights, we recognize, easily can be violated by the installation of beepers, but this is not such a case.

■ The actual use of the devices, providing continued surveillance of the package and indicating when it was opened, presents a different problem. Electronic tracking devices continually broadcast "here I am" and when appropriate "the package has been opened." *United States v. Holmes,* 521 F.2d 859, 865 n.12 (5th Cir. 1975), *aff'd en banc by an evenly divided court,* 537 F.2d 227 (5 Cir. 1976). This intrusion, though, is slight and is not an impermissible search. Transmitting the package's location is merely an aid to what can be accomplished by visual surveillance. Permissible techniques of surveillance include more than the five senses of officers and their unaided physical abilities. Binoculars, dogs that track and sniff out contraband, searchlights, fluorescent powders, automobiles and airplanes, burglar alarms, radar devices, and bait money contribute to surveillance without violation of the Fourth Amendment in the usual case.[1] On the other hand, wiretaps, breaking and entering, and many other searches and seizures fall on the other side of the line. The issue before us is whether the mere presence of the beeper, it having been attached without violating the Fourth Amendment, sufficiently resembles a wiretap to require the "antecedent justification" that a warrant would provide. We hold that it does not. We acknowledge that a beeper which said

1. *See Hodges v. United States,* 243 F.2d 281 (5th Cir. 1957) (use of binoculars to spot illegal activity upheld); *United States v. Solis,* 536 F.2d 880, 881–82 (9th Cir. 1976), *United States v. Bronstein,* 521 F.2d 459, 461–63 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976), and *United States v. Fulero,* 162 U.S.App.D.C. 206, 498 F.2d 748 (1974) (per curiam) (use of dogs to sniff out narcotics is permissible); *United States v. Hood,* 493 F.2d 677, 680 (9th Cir. 1974) and *United States v. Lee,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927) (use of flashlight or searchlight proper); *United States v. Hunt,* 548 F.2d 268, n.1 (9th Cir. 1977) (use of fluorescent powder in controlled heroin delivery sufficient evidence to sustain conviction); *Dean v. Superior Court,* 35 Cal.App.3d 112, 110 Cal.Rptr. 585 (1973) (discovery of marijuana field by helicopter surveillance upheld) (*but see People*

*v. Sneed,* 32 Cal.App.3d 535, 108 Cal.Rptr. 146 (1973), *contra* ); *United States v. French,* 414 F.Supp. 800 (W.D.Okl.1976) (no reasonable expectation of privacy violated by use of burglar alarm); *United States v. Moore,* 562 F.2d 106, 112 (1st Cir. 1977) (electronic surveillance devices attached to automobiles are similar to the use of radar devices and binoculars, and thus permissible); *United States v. Bishop,* 530 F.2d 1156 (5th Cir. 1976) (per curiam) and *United States v. Perez,* 526 F.2d 859, 863 (5th Cir. 1976) (use of electronic monitoring device similar to use of bait bills, thus permissible).

*See also* Annotation: Use of Trained Dog to Detect Narcotics or Drugs as Unreasonable Search Under the Fourth Amendment, 31 A.L.R. Fed. 931 (1977), and Annotation: Observation Through Binoculars as Constituting Unreasonable Search, 48 A.L.R.3d 1178 (1973).

"the package is being opened" *and* related much more might well be considered equivalent to a wiretap. However, a beeper which says no more than "the package is being opened" does not constitute an intrusion entitled to the protection of *Katz*. It is but another surveillance aid previously affixed to the package without violating the Fourth Amendment. It no more violates the Fourth Amendment than would the use of binoculars designed for night by an officer located on the roof of a building whose owner had given him permission to enter, ascend, and survey.

### III.

### *Lovejoy's Consent to Search the Basement.*

Dubrofsky contends that Ms. Lovejoy did not voluntarily consent to the search of her basement and that she had no authority to consent to that search. We disagree with both these arguments.

■ It was found at the suppression hearing that Ms. Lovejoy gave a knowing and voluntary consent to search the basement. Findings of fact made at a suppression hearing will be overturned on appeal only if clearly erroneous. *United States v. Chase,* 503 F.2d 571, 572–73 (9th Cir. 1974), *cert. denied,* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975). *See also Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *United States v. Welp,* 469 F.2d 688 (9th Cir. 1972). We find nothing in the record to indicate that the findings of the magistrate at the suppression hearing are clearly erroneous, and therefore hold that Ms. Lovejoy's consent was voluntary.

■ Dubrofsky's argument that Ms. Lovejoy had no authority to consent to the search also fails. Authority justifying consent to search need only rest on mutual use of the property. *United States v. Gulma,* 563 F.2d 386, 389 (9th Cir. 1977). A party who has a key to the premises and access throughout the residence can also give a valid consent to search. *United States v. Green,* 523 F.2d 968 (9th Cir. 1975). *See*

*also United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). As the permanent resident of the house, Ms. Lovejoy more than meets these minimum requirements for authority to consent to a search.

Dubrofsky urges that *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) and *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) are controlling. These cases involved hotel and apartment searches authorized by clerks and landlords and have no effect here. There the focus was on an owner relinquishing control over a section of the premises to a business tenant. The facts here are very different. Ms. Lovejoy never relinquished control over the basement. She had valid authority to consent to the search.

### IV.

### *Sufficiency of the Affidavit Supporting the Search Warrant.*

Dubrofsky next argues that the warrant to search his house was invalid because it was insufficiently supported by Special Agent Stewart's affidavit.

Special Agent Stewart's affidavit supporting the request for the warrant recited the details of Dubrofsky's arrest and the events surrounding it. An additional sworn deposition requested that the warrant also include a search for heroin or other controlled substances, narcotics paraphernalia, passports, and evidence of Dubrofsky's residence. A warrant was issued authorizing a search and seizure of these items at Dubrofsky's home.

■ A search warrant may not rest upon mere affirmance or belief without disclosure of supporting facts or circumstances. *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Affidavits in support of a warrant, however, should be tested in a commonsense and realistic fashion. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The affidavit need only recite sufficient underlying circumstances to enable the magistrate to perform his

detached function and not serve as a mere rubber stamp. 380 U.S. at 109, 85 S.Ct. 741. Finally, a warrant may be upheld when the nexus between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband. *United States v. Spearman,* 532 F.2d 132, 133 (9th Cir. 1976).

Agent Stewart's affidavit provides a sufficient basis for a neutral magistrate to issue a search warrant. Heroin importers commonly have heroin and related paraphernalia where they live. *Spearman, supra,* at 133. In addition, Dubrofsky's passport and alien registration card, precisely identified by number, would probably be found at his home. Finally, it is probable that utility bills and other evidence of residence would be found at Dubrofsky's home. Tested in a commonsense manner, the affidavit is sufficient to uphold the warrant.

### V.

*Execution of the Search Warrant.*

A more difficult problem is posed by the execution of the search warrant. The Fourth Amendment requires that warrants particularly describe what is to be seized, leaving nothing to the discretion of the officer executing the warrant. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). This fundamental protection is intended to prevent general searches.

Special Agent Petrotta was telephonically advised at Dubrofsky's house that the warrant had been issued, but was not informed of the specific items authorized to be seized. Petrotta testified that he had participated in searches of residences following arrests for importation pursuant to controlled deliveries on at least ten occasions, and assumed that the warrant authorized the usual search for passports, correspondence, telephone bills and other evidence of residency, narcotics, and narcotics paraphernalia.

The execution of the warrant can be upheld, but only on the peculiar facts of this case. Agent Petrotta was familiar with the investigation of Dubrofsky and had participated in similar cases. He had no reason to suspect that the warrant authorized a greater or lesser search than he had routinely executed in other cases. Dubrofsky's rights were not jeopardized, because Agent Petrotta's search conformed to the specifications of the warrant. No general search occurred. Based on the special circumstances of this case, the execution of the warrant is upheld.

### VI.

*Imposition of Consecutive Sentences.*

Dubrofsky argues that consecutive sentences for importing heroin in violation of 21 U.S.C. § 952 and possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) are improper because both convictions involve a continuous act with the same contraband. We disagree.

In enacting 21 U.S.C. §§ 841(a)(1) and 952, Congress clearly viewed importation and possession with intent to distribute as separate evils that could be punished cumulatively. The United States Code treats them as distinct and separate crimes in different sections. We believe that Congress plainly intended these offenses to be punished separately, and, in appropriate cases, with consecutive sentences. *United States v. Valot,* 481 F.2d 22, 28 (2d Cir. 1973).

*United States v. Oropeza,* 564 F.2d 316 (9th Cir. 1977) is distinguishable. There the court held that consecutive sentences for distribution and for intent to distribute were improper because Congress enacted the intent to distribute provision to punish those who failed to carry out a distribution scheme, not to punish a distributor twice. 564 F.2d at 324. Here the concern is with both an importing and a distributing scheme, each of which is a separate and distinctive criminal act. Unlike the *Oropeza* situation, the Congressional intent is to treat the crimes separately and differently.

Consecutive sentencing was within the discretion of the trial judge and properly imposed.[2]

## VII.

### Nondisclosure of Confidential Memorandum.

Finally, appellant contends that we should remand to the district court for resentencing because the sentencing judge failed to disclose to appellant or his counsel a three-page confidential memorandum furnished by the Probation Department on which he relied to some extent in determining the appellant's sentence. Appellant relies primarily upon *United States v. Perri*, 513 F.2d 572 (9th Cir. 1975) in which we stated that as a general rule "fundamental fairness to the defendant requires that he and his attorney be told the substance of all derogatory information which adversely affects his interests and which has not otherwise been disclosed in open court." *Id.* at 575. This principle is also embodied in Rule 32(c)(3)(A) of the Fed.R.Crim.P.

The government correctly points out that the sentencing judge did not rely exclusively or even compellingly on the confidential memorandum. Rather he relied on the report and recommendation of the probation officer, which was made available to the defense, the arguments in open court, the testimony of the appellant, and his personal perceptions "as he visualized the defendant" (R.T. 145), in addition to the confidential report. The government also points out that the sentencing judge explicitly stated that the confidential report weighed no more heavily than did the other factors upon which he relied. (R.T. 146). For authority the government places its hopes on *United States v. Thompson*, 541 F.2d 794 (9th Cir. 1976) in which we held that a sentencing judge was not required to state in open court the factors upon which he relied in imposing sentence. We also held in *Thompson* that a remand for resentenc-

ing was not necessary where, despite the allegations of the appellant, the sentencing judge did not rely on misinformation in imposing sentence.

While my two brothers differ with me, the difficulty with the government's position, as I see it, is that the defense was not told by the judge the "substance" of the derogatory information set forth in the confidential memorandum and his nondisclosure was not based on a reason recognized by Rule 32(c)(3)(A). Nondisclosure is justified by Rule 32(c)(3)(A) when "in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons." In this instance the sentencing judge stated: "The reason for non-disclosure, frankly, counsel, is it's my view that it's a proper exercise of discretion, because I think the Government is put in a very, very equivocal position by disclosing ongoing investigations to which disclosure of which might result in their being aborted because of the information coming in some fashion to the individuals who were under scrutiny." (R.T. 146). This is not a reason that fits within those set forth in Rule 32(c)(3)(A), although the concern of the sentencing judge is quite understandable. Moreover, after examining the confidential memorandum, which under seal was a part of the record on this appeal, and reading the transcript of the sentencing proceedings, I, but not my brothers, conclude that the "substance" of the derogatory information was not made available to the defense by the sentencing judge. Therefore, I would remand for resentencing of the appellant. Nothing in *Thompson* precludes this. It did not address the issue which we confront here.

---

**2.** We need not get involved in Dubrofsky's metaphysical argument that only one transaction is involved because he constructively possessed the heroin when he imported it and actually possessed it when he was arrested. Congressional intent is clear on how these crimes are to be treated, and the spatial dimensions of Dubrofsky's possession are irrelevant.

I do not wish to be understood as stating that nondisclosure of the confidential memorandum could never be justified under one or more of the reasons recognized by Rule 32(c)(3)(A). Perhaps it can be. I do not think we can do so, however, on the basis of the record before us. The government should not be permitted to preserve the secrecy of ongoing investigations and utilize their existence in sentencing procedures without regard to our teaching in *Perri* and Rule 32(c)(3)(A).

I would affirm the conviction and remand for resentencing.

KILKENNY, Circuit Judge, with whom TRASK, Circuit Judge, joins:

█ In Part VII of his opinion, Judge Sneed argues that the defense ". . . was not told by the judge the 'substance' of the derogatory information set forth in the confidential memorandum and his nondisclosure was not based on a reason recognized by Rule 32(c)(3)(A)." We disagree. In giving his reasons for nondisclosure, the sentencing judge stated: "The reason for non-disclosure, frankly, counsel, is it's my view that it's a proper exercise of discretion, because I think the Government is put in a very, very equivocal position by disclosing ongoing investigations to which disclosure of which might result in their being aborted because of the information coming in some fashion to the individuals who were under scrutiny." (R.T. 146). We believe this disclosure is sufficient.

*United States v. Perri, supra,* upon which Judge Sneed relies, is clearly distinguishable. There, the judge made it clear that his *sole reason* for imposing the maximum sentence was his information that the defendant had recently been identified as a representative of organized crime in the city. That is a far cry from the record here presented. Here, the sentencing judge *did not* rely exclusively or even compellingly on the confidential memorandum. Rather, the judge relied on the report and recommendation of the probation officer which was made available to the defense, the arguments in open court, the testimony of the

appellant, and his personal perceptions "as he [the judge] visualized the defendant", in addition to the confidential report. Additionally, the record shows that "the confidential report weighed no more heavily than did the other factors upon which he [the judge] relied."

We concur in Judge Sneed's opinion except as to Part VII. A remand for resentencing is unnecessary. We affirm the conviction in its entirety.

AFFIRMED.