45 F.3d 437
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Teofilo Monjardin LOPEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Witaliy SAMOILIW, Defendant-Appellant.
 Nos. 93-50688, 93-50815.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1994 as to defendant Lopez, 93-50688.
*
Argued and Submitted Dec. 6, 1994 as to defendant Samoiliw,
93-50815.
Decided Dec. 16, 1994.
 
 Before: BROWNING, ALDISERT**, and GOODWIN, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Witaliy Samoiliw and Teofilo Monjardin Lopez entered conditional guilty pleas to one count of conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. Sec. 846 and one count of possession with intent to distribute 499 kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Lopez and Samoiliw assign error to the denial of their motions to suppress evidence found in two vans. They argue that the warrantless search of the tan van at Lopez' residence was not saved by the automobile exception to the warrant requirement of the Fourth Amendment and that the warrant to search the white van at Samoiliw's residence was tainted by the fruits of the prior illegal search of the tan van. Because the automobile exception applied to the search of the tan van and both searches were supported by probable cause, we affirm.
 
 I. FACTS
 
 3
 Beginning in March 1993, narcotics officers began surveillance of one Eiffel Sanchez. During the more than six weeks of surveillance, investigators saw Sanchez use a number of payphones at various locations, conduct extensive countersurveillance driving and engage in an apparent aborted car swap, without ever seeing Sanchez go to a place where he might be legitimately employed.
 
 
 4
 On May 6, 1993, Sanchez drove a white Chevrolet van to a parking lot. Minutes after Sanchez left the white van in the parking lot, Lopez entered and drove off in it, followed by Sanchez in a truck. Both engaged in countersurvellaince driving. Investigators followed the white van to Samoiliw's residence. Soon a tan GMC van driven by Fernando de la Torre arrived at Samoiliw's residence. At some point during the day, the back seat of the tan van was removed. Investigators saw Lopez enter and exit the white van with a box and tape several times. Throughout the day, de la Torre and Lopez were seen periodically looking or going into the white van. Lopez and de la Torre left for the evening in the tan GMC van, spending the night in a local motel.
 
 
 5
 On May 7, 1993, de la Torre and Lopez returned to Samoiliw's residence in the tan van via a circuitous path in an apparent attempt to elude followers. Upon their arrival at Samoiliw's, they parked the tan van next to the white van inside Samoiliw's garage. Investigators then saw the two transfer boxes from the white van to the tan van. Officers followed Lopez in the tan van to Lopez' residence where they arrested Lopez and searched the tan van, finding 200 kilograms of cocaine inside. Officers then sought a warrant to search the white van back at Samoiliw's house. Officer Robert Conklin in his affidavit to the magistrate recounted in detail the surveillance beginning in March and culminating in the seizure of drugs in the tan van. The magistrate granted the search warrant and upon its execution, investigators found 299 kilograms of cocaine in the white van.
 
 
 6
 Lopez and Samoiliw both moved to strike the affidavit for the search warrant leading to the search of the white van. The district court denied the motions. Although the district court found that Lopez' consent to the search of the tan van was improper, the district court found that the warrantless search of the tan van was legal under the vehicle exception to the warrant rule. Because the search of the tan van was legal, the court reasoned, the search of the white van was untainted.[1]
 
 
 7
 II. The Vehicle Exception to the Warrant Rule
 
 
 8
 Where officers have probable cause to believe that a vehicle contains contraband, they may stop and search that vehicle without first obtaining a warrant. Carroll v. U.S., 267 U.S. 132 (1925). The tan van parked at Lopez' residence falls within this exception. The vehicle exception does not stop at a defendant's driveway as Lopez argues. In U.S. v. Hatley, 15 F.3d 856, 858-59 (9th Cir.1994), we upheld the search of an inoperable car parked on appellant's property as within the vehicle exception. Likewise, in U.S. v. Hamilton, 792 F.2d 837, 842-43 (9th Cir.1986), we extended the vehicle exception to include a motor home that was parked in a driveway and being used as a residence at the time of the search.
 
 
 9
 Nor is the vehicle exception limited to circumstances in which the police cannot obtain a warrant. Lopez argues under Coolidge v. New Hampshire, 403 U.S. 443 (1970) that the police were required to acquire a warrant before searching the car, because after Lopez' arrest, they could remove risk of flight or destruction of evidence by guarding the car until a warrant could be issued. However, any argument that Coolidge so limited the vehicle exception should have been put to rest by U.S. v. Johns, 469 U.S. 478, 486-87 (1985) in which the Supreme Court permitted the warrantless search of containers that had been in government custody for three days, because the containers were initially found in a car.
 
 
 10
 Because the vehicle exception applies to the tan van, that search was legal, so long as it was supported by probable cause. Looking at the totality of the circumstances with the benefit of a narcotics investigator's insight, probable cause existed to search the tan van. Investigators had observed Sanchez, Lopez, Samoiliw and de la Torre engage in activities that the trained eye recognizes as hallmarks of drug trafficking. Officers observed vehicle switches, the frequent use of pay phones to make normal, as well as pager calls, the use of multiple locations, extensive countersurveillance driving, numerous trips to a van with a box and tape, the use of a motel rendezvous and transfer of cargo from one van to another.
 
 
 11
 While recognizing that each of the above activities viewed in isolation may be equally as consistent with innocent behavior, we have held that countersurveillance driving, the use of public phones, pager calls and vehicle switches are indicative of narcotics distribution, finding probable cause to exist in cases with weaker facts than the one at hand. U.S. v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991); U.S. v. Del Vizo, 918 F.2d 821, 826-27 (9th Cir.1990). The failure of the investigators to disclose why they initiated surveillance is not relevant. In many cases the defense would prefer that the question not be asked. An informant's tip or any other corroborating evidence is just one more factor in the totality of the circumstances to be considered.
 
 
 12
 U.S. v. Freitas, 716 F.2d 1216 (9th Cir.1983) is distinguishable. In Freitas, virtually all the activities observed were as consistent with importing furniture as with importing drugs. The only incriminating activity observed was countersurveillance driving. More importantly, a thorough Customs search of a furniture shipment failed to uncover any indication of illegal drug activity. Id. at 1224. In the present case, the quantum of suspicious activity is much higher. Moreover, there was no prior search or apparent innocent explanation for the acts observed to mitigate the incriminating observations.
 
 
 13
 The vehicle exception to the warrant rule applied and probable cause supported the search of the tan van. Accordingly, we affirm the denial of the motion to suppress the evidence found in the tan van.
 
 
 14
 III. The Legality of the Warrant to Search the White Van
 
 
 15
 Appellants argue that because the initial search of the tan van was illegal, the inclusion in the affidavit supporting the warrant of the description of evidence found during that illegal search infected the warrant to search the white van. Because we find that the search of the tan van was legal under the vehicle exception, the alleged defect in the warrant to search the white van at Samoiliw's residence collapses.
 
 IV. The Necessity of a Franks Hearing
 
 16
 Under Franks v. Delaware, 438 U.S. 154 (1978), a defendant is entitled to a hearing on alleged false statements and omissions in an affidavit under certain circumstances. Samoiliw argues that the affidavit was defective because it failed to reflect that Lopez' consent to search the tan van was invalid or the circumstances under which Lopez consented and that these omissions required a Franks hearing. However, in order to obtain a Franks hearing, the defendant must show that the omissions were deliberately or recklessly made. Id. at 171-72. There has not been, nor could there be such a showing here. The affiant officer cannot be expected to craft his affidavit around future events he could not foresee, like the invalidation of Lopez' consent by a reviewing court.
 
 V. Conclusion
 
 17
 Because the search of the tan van was legal, the search of the white van was legal. Because there is no evidence that the affiant officer deliberately or recklessly left anything out of the affidavit, no Franks hearing was required. We AFFIRM.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Ruggero J. Aldisert, Senior Circuit Judge of the U.S. Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court also found that Lopez and Samoiliw each lacked standing to challenge the search of the van in the other's care, because they had neither a possessory interest in the van in the other's care or the contraband within it. However, because both the search of the tan van and the white van were challenged before the district court and appealed to this court, the standing issue has no impact on the resolution of this appeal