**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Loren Adrian SEALEY,
Defendant-Appellant.**

**No. 86–1187.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1987.

Decided Oct. 20, 1987.

---

Margaret A. McKnight, Mike A. Karago-
zian, Fresno, Cal., for defendant-appellant.

John K. Vincent, Fresno, Cal., for plain-
tiff-appellee.

Before ANDERSON, NORRIS and
LEAVY, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Loren Sealey pled guilty to possession
with intent to distribute a controlled sub-
stance in violation of 21 U.S.C. § 841(a)(1).

He appeals the district court's denial of his motion to suppress evidence from a consent search. 630 F.Supp. 801. We affirm.

## I. FACTS

On June 19, 1985, Fresno County deputy Gary Healy received a dispatch informing him of a domestic dispute with probable use of a firearm at a local residence. Healy proceeded to the house where he was met at the door by appellant Sealey and his wife, Julie Sealey. Julie appeared distraught and upset. Healy removed her to the kitchen where she stated she wanted Sealey arrested. Healy advised Julie that she would have to make a citizen's arrest. She did so and Sealey was removed from the scene.

After Sealey's removal, Julie told Healy there was a gun in the house, and she was afraid Sealey would harm her with it. Julie directed Healy to the bedroom where she believed the gun was located on top of a dresser. However, Healy did not find it there.

The facts as to what occurred next are disputed; however, the district court found as follows: Healy continued to search the bedroom, where he found a partially opened travel bag. Without objection from Julie, Healy opened the bag and found several white envelopes. Julie's response was "Oh God." Healy asked what the envelopes contained. Julie replied, "money." Healy responded, "you're going to have to be honest with me." At this point, Julie picked up a cigarette case and pulled out some white powder. When Healy asked what it was, Julie answered "crank" and said the money was from its sale.

Healy contacted his superior, Sgt. Tafoya, by radio and then followed Julie to the kitchen where she showed him some marijuana contained in a coffee can. Healy responded that he was going to continue his search for the gun because he feared for her son's safety, and returned to the bedroom where he continued his search until he found the gun.

By this time Tafoya had arrived. After being apprised of what Healy's limited search had uncovered, Tafoya contacted the narcotics detail unit. When Narcotics Detective Mike Stanford arrived, Julie had given her consent for the officers to search for narcotics. Stanford then established with Julie that she lived there with Sealey, her husband; that they were purchasing the property; and that she had unlimited access to all areas. He asked her if there were any areas in the premises which she did not want the officers to search. Julie responded that the officers should go ahead with the search. At one point, Stanford talked to Julie about her control over the garage area. She told him that she could go in the garage if she wanted, but her husband would become angry with her.

Next, Detective Meyers arrived. He questioned Julie about her marriage to Sealey, her access to the residence, garage and surrounding area, and her fifty percent ownership of the residence. After incorporating her answers into a written consent form, Meyers read the document to Julie and explained that she could withdraw her consent at any time. The record does not indicate that there was discussion as to what objects the officers would be searching for, nor was Julie's consent limited to specific objects.

Julie's testimony differed in some respects from the officers' testimony. Julie testified that when Healy reached on top of the dresser to retrieve the gun, he found marijuana. While continuing to search for the gun, he patted her purse, picked up a cigarette case, opened it up, and pulled out methamphetamine. Healy then unzipped a partially opened travel bag, pulled out an envelope, and asked her what it contained. Julie replied that it was money. She further testified that the search proceeded for hours without her consent. After the search was completed, Julie signed the consent form. She testified that she was tired and did not pay attention to what she was signing.

The search of the residence and garage produced a substantial amount of contraband. It was found in boxes in the attic over Sealey's bedroom and in covered plas-

tic buckets and sealed PVC pipes in the garage.

## II. DISCUSSION

### A. *Authority to Consent*

Sealey contends that Julie did not have the authority to consent to the officers' search of the garage or the sealed containers. We disagree.

In the past, we have reviewed the issue of authority to consent for clear error. *See United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir.1978). Subsequently, in *United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc) *cert. denied*, 469 U.S. 824, 105 S.Ct. 107, 83 L.Ed.2d 46 (1984), we adopted a functional analysis for determining the appropriate standard of review for cases involving mixed questions of law and fact. *McConney*, 728 F.2d at 1204. The analysis focuses on the nature of the inquiry. *Id.* If the inquiry is "essentially factual," then the clearly erroneous standard applies. *Id.* at 1202. If, on the other hand, the question involves a mixed question of law and fact, where the inquiry is largely legal, then the issue should be reviewed *de novo*. *Id.* Finally, in *United States v. Hamilton*, 792 F.2d 837, 841 (9th Cir.1986), we explicitly left open whether the issue of apparent authority to consent is essentially factual and thus whether our standard of review should be *de novo* or for clear error. We found it unnecessary to decide the issue since the consent would have been valid under either standard. *Id.* For the same reason, given the facts in this case, we do not decide the standard now.

It is well established that third-party consent is lawful when granted by a person who had common authority over the premises or effects sought inside. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The common authority justifying the consent need only rest "on the mutual use of the property by persons having joint access or control for most purposes...." *Id.* at 171 n. 7, 94 S.Ct. at 993.

■ Sealey first contends that Julie lacked the authority to consent to the search of the garage. He bases his argument on Julie's statement to the officers that she needed her husband's permission to go into the garage. Sealey argues that this limitation establishes that Julie did not have common control over the garage or the items in it.

Both detectives Stanford and Meyers questioned Julie about her access and control over the property. Julie's mutual use and common authority was established by her statements that: 1) she was legally married to Sealey; 2) she was part owner of the home; 3) she had a fifty percent interest in the house; and 4) she had full access to the residence, garage, out-buildings and the surrounding grounds.

As the district court noted, Sealey fails to point to any facts in the record or authority which suggest that he could deny Julie equal access by forbidding or restricting her access to the garage. *United States v. Sealey*, 630 F.Supp. 801, 809 (1986). As part owner and occupant, Julie had mutual access to the entire premises and valid authority to consent to the search of the garage.

■ Sealey further contends that because the sealed containers exhibited an expectation of privacy, Julie did not have the authority to consent to the search of the containers. The record does not support Sealey's argument. First, the containers were not marked in any way to indicate Sealey's sole ownership. *See United States v. Lopez-Diaz*, 630 F.2d 661, 666 (9th Cir.1980). Second, Julie did not object to the search of the containers or disclaim an interest in them. *See id.* at 666; *United States v. Wilson*, 536 F.2d 883, 885 (9th Cir.1976). Finally, the containers were not the type of "enclosed spaces"—such as suitcases, strong boxes, footlockers, etc., commonly used to preserve privacy. *See United States v. Block*, 590 F.2d 535, 541 (4th Cir.1978). We conclude that Julie had valid authority to consent to the search of the sealed containers.

### B. *Voluntariness*

■ Sealey also contends that Julie's consent to the search was involuntary.

Voluntariness is a question of fact to be determined by surrounding circumstances. *United States v. Ritter*, 752 F.2d 435, 439 (9th Cir.1985). We review a district court's findings for clear error. *United States v. Caicedo-Guarnizo*, 723 F.2d 1420, 1423 (9th Cir.1984).

Sealey bases his argument on facts elicited from Julie's testimony. However, the district court decided that Julie's testimony was not credible. When findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Nothing in the testimony accepted by the district court indicates that Julie's consent was coerced. Julie requested that Healy find the gun. The narcotics detectives who arrived later established Julie's authority to consent and made sure she knew she had the right to refuse or withdraw consent. Also, Julie willingly signed the consent form. Under these circumstances, we are unable to find that the trial court clearly erred in holding that Julie's consent was voluntary.

### C. *Scope of Consent*

█ Sealey contends that the search and seizure of the travel bag by Healy exceeded the scope of consent given to search for the handgun. The question of whether the scope of consent has been exceeded is factual and determined by the totality of the circumstances. *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir.1983). We will uphold the trial judge's findings unless clearly erroneous. *Id.*

█ Although search and seizure conducted with proper consent is permissible under the Fourth Amendment, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973), the government must conform to limitations placed upon the consent to search. *Rubio*, 727 F.2d at 796.

The circumstances here do not indicate that any limitations were placed on the search for the gun. Julie requested that Healy find the gun, wherever it might be. Healy did not find the gun on the dresser where Julie believed it would be located. Julie agreed that Healy should continue to look for the gun. The travel bag was in the area where Julie thought the gun would be. Also, Julie did not attempt to withdraw her consent at any time during the search. Under the circumstances, it was reasonable for Healy to believe the gun might be in the travel bag. Nothing in the record indicates that the district court's conclusion that the search of the travel bag was within the scope of consent was clearly erroneous.

AFFIRMED.

NORRIS, Circuit Judge, concurring in part and dissenting in part:

I join Judge Anderson's opinion with one caveat. I see no basis in the record for a finding that the officers were authorized by Julie Sealey to saw the sealed PVC pipes open to search for controlled substances. To consent to a search is one thing; to consent to the destruction of property is quite another. To illustrate, Julie Sealey's consent to search for drugs was broad enough to authorize the officers to open bureau drawers; it did not, however, authorize them to destroy the bureau to discover the contents of the drawers. In my view, the officers should have obtained her specific consent to saw the PVC pipes open before doing so. Thus I would suppress the evidence of the controlled substances found inside the pipes. I would not, however, suppress the evidence of the controlled substances which the officers found without destroying property.