988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward Anthony KALETKA, Defendant-Appellant.
 No. 92-30020.
United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1993.
Decided Feb. 11, 1993.
 
 Appeal from the United States District Court for the District of Oregon, No. CR-90-328-HJF; Helen J. Frye, District Judge, Presiding.
 D.Or.
 AFFIRMED.
 Before D.W. NELSON, TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Edward Anthony Kaletka pleaded guilty to the crime of unarmed bank robbery in violation of 18 U.S.C. § 2113(a) (1988). The plea agreement was made pursuant to Fed.R.Crim.P. 11(a)(2) which permits the defendant to enter a conditional plea of guilty, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. Kaletka now appeals the district court's rulings on (1) his pretrial motion to suppress the in-court and out-of-court identifications, and (2) his pre-trial motion to suppress evidence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 * IDENTIFICATION
 
 
 4
 Appellant was charged with three counts of unarmed bank robbery. As part of the government's investigation of the case, the victim tellers from each bank were shown a photographic display of six white males, including Appellant. Appellant argues that his photograph was impermissibly suggestive requiring that the tellers' out-of-court identifications be suppressed. He further contends the subsequent in-court identifications should be suppressed because their identification was the product of the impermissibly suggestive photographic display.
 
 
 5
 We review the constitutionality of the pretrial identification procedures de novo. United States v. Johnson, 820 F.2d 1065, 1072 (9th Cir.1987). Admission of pretrial identifications violates due process of law when the identification procedure creates a "very substantial likelihood of irreparable misidentification." United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir.1985) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). To determine whether the pretrial identification procedure was impermissibly suggestive, we examine the "totality of the circumstances." Davenport, 753 F.2d at 1462 (citing Stovall v. Denno, 388 U.S. 293, 303 (1967)). Even if the procedure was impermissibly suggestive, use of the evidence is appropriate " 'if sufficient indicia of reliability are present.' " United States v. Monks, 774 F.2d 945, 956 (9th Cir.1985) (quoting United States v. Hanigan, 681 F.2d 1127, 1133 (9th Cir.1982), cert. denied, 459 U.S. 1203 (1983)). Factors to be considered in evaluating the reliability of both in-court and out-of-court identifications are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986) (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).
 
 
 6
 Appellant argues the photographic display used to identify him as the perpetrator was impermissibly suggestive because his face encompasses a much greater portion of the photograph than do the other faces in the other photographs. He further argues that there is a spotlight on his face which is absent from the other photographs and his eyes are "bugging out" in a manner which suggests that he is either psychologically disturbed or on drugs. Finally, he argues that he appears to be in jail attire with a police number hanging around his neck.
 
 
 7
 None of the allegedly suggestive aspects of appellant's photograph is sufficient to demonstrate that its use in the disputed display was improper. We have reviewed the photo display, and we conclude it was not impermissibly suggestive. In Johnson, this court held that the pretrial identification procedures were not impermissibly suggestive when the defendant was the only person in the lineup over the age of thirty, two others in the lineup were noticeably more clean shaven than the defendant, and the photograph of the defendant was hazier than the other photos in the photo montage. Johnson, 820 F.2d at 1073. In United States v. Carbajal, 956 F.2d 924, 929 (9th Cir.1992), this court held that the fact that the defendant was the only one in the photospread with discernible bruises on his face was insufficient to give rise to a very substantial likelihood of misidentification. The distinguishing factors in the instant case are no more "suggestive" than the factors in Johnson and Carbajal.
 
 
 8
 In evaluating the reliability of the out-of-court identifications, we first consider the opportunity of the witnesses to view the criminal at the time of the crime. Appellant allegedly robbed several banks between June 26, 1990 and June 29, 1990. As part of the government's investigation of the case, the victim tellers from each bank were shown a photographic display of six white males, including Kaletka. One of the tellers from one of the banks testified she had a good opportunity to observe the robber under normal bank lighting. She testified that the robbery took about two or three minutes and she was face to face with the robber for about one minute. A second teller from another bank did not testify to the length of time that she observed the robber. However, she was the teller at that bank who gave the robber the money and she was able to give a clear description of him to the police immediately following the incident. She testified to such detail as the fact that the robber's sunglasses had a band on them "that helps keep them on your neck if you don't want to wear them." From the detailed description she gave to the police immediately following the incident, we conclude she had ample opportunity to view the witness at the time of the crime.
 
 
 9
 We also must consider the witnesses' degree of attention. Each teller was a "victim teller" in each of the banks that were robbed. Each of the tellers provided the robber with the cash from her window. They were not casual observers and it is clear that their attention was focused on the defendant.
 
 
 10
 Next, we consider the accuracy of the witnesses' prior description of the criminal. Each teller made accurate notes immediately following the incident. Their notes include a detailed description of the robber's clothing, sunglasses, hair style and color. Notably, though the tellers had no contact with one another, their independent notes and descriptions corroborate each other.
 
 
 11
 We must also consider the witnesses' degree of certainty at the time when they made the identifications. One of the tellers testified she knew with certainty that the person she identified was the person who had robbed them. Another teller testified, "I was trying to look carefully and think about it, not jump to any conclusions right away looking at the pictures." This statement reflects a thoughtful degree of certainty about the identification.
 
 
 12
 Finally, we consider the length of time between the crime and the identification. The tellers were not shown the photospread until two and one half months after the incident. Considered in the totality of the circumstances, we do not find the length of time to be an indicium of unreliability.
 
 
 13
 We hold the district court properly denied Appellant's motion to suppress the in-court and out-of-court identifications.
 
 II
 THE WARRANTLESS SEARCH AND SEIZURE
 
 14
 Appellant argues the district court erred in denying Appellant's motion to suppress the evidence obtained from the warrantless search and seizure of Appellant's personal property.
 
 A. The Search Of The Attic
 
 15
 Appellant argues his father did not have authority to permit the officers to search his father's attic because he had rented the attic from his father. In Illinois v. Rodriguez, 497 U.S. 177, 188 (1990), the Supreme Court held:
 
 
 16
 As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?
 
 
 17
 Rodriguez, 497 U.S. at 188. (internal quotations omitted).
 
 
 18
 In United States v. Yarbrough, 852 F.2d 1522, 1533-34 (9th Cir.) cert. denied, 488 U.S. 866 (1988), we held that the owner of a shack occupied by defendant prior to his arrest had authority to consent to a search of the shack. Citing United States v. Matlock, 415 U.S. 164, 171 n. 7 (1974), we said:
 
 
 19
 'Common authority' rests on mutual use of the property by those generally having joint access or control so that it is reasonable to recognize that any of the parties has the right to permit inspection and others have assumed the risk that the third parties might consent to the search.
 
 
 20
 Yarbrough, 852 F.2d at 1534. We further explained:
 
 
 21
 Even if the consenting third party does not in fact possess actual authority to consent, a warrantless search may be justified when the authorities have reasonable grounds to believe the consentor has apparent authority to consent.
 
 
 22
 Id. (citing United States v. Sledge, 650 F.2d 1075, 1077-78 (9th Cir.1981)).
 
 
 23
 We examined the facts for indicia of joint access or control and held that the owner had actual authority to consent to the search. We considered the facts:
 
 
 24
 Atkins owned the shack and the surrounding property. Lane wanted to use the shack for a little more than a month. In return for Atkins allowing him to stay in the shack, Lane performed various chores around the property. On at least three of the four weekends that Lane was there, Atkins came up to visit Lane and stayed with him in the one habitable room of the dwelling. Atkins stayed with Lane on the night before Lane was arrested. The shack possessed no outside door (there was a door with a padlock going into the room inhabited by Lane), no window, and no utilities. There was no furniture except for a bed frame and an easy chair. There were two keys to the padlock. Lane kept one and the other was hidden under a rock on the property. Atkins knew where the second key was. Atkins had some of his own personal property in the same room inhabited by Lane. Atkins had complete access throughout the property in general, and to the room lived in by Lane in particular. It was as much his own place as it was Lane's. A party who 'has the key to the premises and access throughout the residence' can give a valid consent to search.
 
 
 25
 Id. (citations omitted). We held that Atkins had authority to consent to the search. Id. We also held that even if the owner did not possess actual authority to search, the FBI agents reasonably believed in the owner's apparent authority to consent. Id.
 
 
 26
 Under Yarbrough, we hold that Appellant's father had actual authority to consent to the search of the attic, and even if he did not possess actual authority to search, the officers reasonably believed that he did. Appellant's father lived in the house and some of his property was in the attic with his son's property. Appellant's father never mentioned a rental agreement between him and his son. He told the agents he had personally placed the defendant's property in the attic. He signed a written consent to search. He removed his car from the garage, put up a ladder, and pointed out which boxes were his sons. Finally, the agents' good faith is demonstrated by the telephone call to the U.S. Attorney's office. Thus, under the test set out by the Supreme Court in Rodriguez, we conclude the agents reasonably believed, on the facts available to them at the time, that Appellant's father had authority to consent to the search of the attic.
 
 B. The Search Of The Boxes
 
 27
 Appellant argues that even if the officers could reasonably conclude his father had authority to search the attic space, they could not reasonably conclude his father had authority to search Appellant's boxes which were in the attic.
 
 
 28
 In United States v. Sealey, 830 F.2d 1028, 1031 (9th Cir.1987), this court held that a wife could consent to the search of sealed containers. In Sealey, the search of the residence and garage produced a substantial amount of contraband found in boxes in the attic over Sealey's bedroom and in covered plastic buckets and sealed PVC pipes in the garage. Id. at 1030. The appellant in Sealey argued that his wife did not have equal access to the garage because he had forbidden her from going inside it. Id. at 1031. However, we held, "As part owner and occupant, Julie had mutual access to the entire premises and valid authority to consent to the search of the garage." Id. As to the sealed containers in Sealey, we held:
 
 
 29
 First, the containers were not marked in any way to indicate Sealey's sole ownership. Second, Julie did not object to the search of the containers or disclaim an interest in them. Finally, the containers were not the type of 'enclosed spaces'--such as suitcases, strong boxes, footlockers, etc., commonly used to preserve privacy. We conclude that Julie had valid authority to consent to the search of the sealed containers.
 
 
 30
 Id. (citations omitted).
 
 
 31
 In the instant case, there is nothing in the record to suggest that the boxes were marked to indicate Appellant's sole ownership, and the father never objected to the officer's search. There is no evidence that opening the boxes required force such that the boxes were destroyed. To the contrary, the agent testified that the wardrobe boxes were too large to move out of the attic, so he searched through them without even moving them.
 
 
 32
 Like Sealey, the instant case involves an area which Appellant claims his father had no access to because Appellant had allegedly signed an agreement with his father. Yet Appellant's father is the owner of the house and has access to the entire premises. Moreover, the investigating officers knew that the boxes had been packed by Appellant's girlfriend. They knew that she had delivered the boxes to Appellant's father's home and that Appellant's father had placed the boxes in the attic without Appellant being present.
 
 
 33
 We hold that because the father had complete access to the entire premises, he also had authority to consent to the search of the containers. Even if he did not have actual authority to consent to the search, the officers, based on the above information, reasonably believed that he had such authority. See also United States v. Green, 523 F.2d 968, 971 (9th Cir.1975) (third party consent to search premises authorizes the opening of brown wrappings on brick-shaped packages of marijuana).
 
 III
 SPEEDY TRIAL
 
 34
 Appellant claims that because the trial court never ruled on his motion to dismiss with prejudice for violations of his right to a speedy trial, the case should be remanded to the district court for a ruling on the motion. This argument is meritless because Appellant pleaded guilty pursuant to Fed.R.Crim.P. 11(a)(2) and failed to preserve this issue for appeal.
 
 CONCLUSION
 
 35
 The district court properly denied Appellant's motion to suppress the in-court and out-of-court identifications as well as his motion to suppress the evidence obtained from the warrantless search and seizure of Appellant's property. We decline to consider Appellant's argument that his right to a speedy trial was violated because he failed to preserve this issue for appeal.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3