9 F.3d 1554
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Demond Clay HARRISON, Defendant-Appellant.
 No. 93-50250.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 1, 1993.*
Decided Nov. 8, 1993.
 
 Before: SCHROEDER, D.W. NELSON and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Demond Clay Harrison appeals his convictions following a conditional guilty plea to armed bank robbery in violation of 18 U.S.C. § 2113(a)(d) and use of a firearm in connection with the robbery in violation of 18 U.S.C. § 924(c). Harrison contends the district court erred by denying his motion to suppress evidence seized pursuant to a warrantless search of his bedroom. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review for clear error the voluntariness of a consent to search. United States v. Kelley, 953 F.2d 562, 566 (9th Cir.1992). It is unclear whether we review de novo or for clear error a district court's determination regarding a third party's authority to consent to a search. Kelley, 953 F.2d at 566. We need not resolve the issue here, however, as we affirm under either standard of review.
 
 
 4
 The government bears the burden to show effective consent. United States v. Guzman, 852 F.2d 1117, 1122 (9th Cir.1988). Voluntariness is a question of fact to be determined by the totality of surrounding circumstances. Kelley, 953 F.2d at 566. A third party's consent to search is effective if he or she possesses common authority over the premises or effects sought to be inspected. United States v. Sealey, 830 F.2d 1028, 1031 (9th Cir.1987). "Common authority" is the mutual use of property by those generally having joint access or control " 'so that it is reasonable to recognize that any of the parties has the right to permit inspection and others have assumed the risk that the third parties might consent to the search.' " United States v. George, 883 F.2d 1407, 1417 (9th Cir.1989) (quoting United States v. Yarborough, 852 F.2d 1522, 1534 (9th Cir.), cert. denied, 488 U.S. 866 (1988)).
 
 
 5
 Here, six police officers with their guns drawn arrested Harrison in front of his grandmother's residence where he had lived for the past four years. Harrison's grandmother came out of the house during the arrest, but the officers told her to go back inside the house. Two officers followed her into the house and two additional officers joined them after Harrison had been taken away. The officers explained that Harrison had been arrested and asked if she would consent to a search. She agreed to the search. None of the officers made verbal threats or had their guns drawn.
 
 
 6
 Before any search took place, two FBI agents arrived and questioned Harrison's grandmother about her living arrangement with her grandson. She told them that Harrison lived with her, she took care of him, and he did not pay rent. She again consented to the search and signed state and federal consent forms. The federal consent form included a clause which stated that she understood that she had the right to refuse consent.
 
 
 7
 When the officers and agents approached Harrison's bedroom, the door to the room was open. From the room, the officers seized a .38 caliber revolver found under the bed mattress, two bullets, and a sweatshirt. During the search of the room, they also noticed a tote bag, which was subsequently seized with Harrison's grandmother's consent when an officer returned to the house two days later.
 
 
 8
 We hold that the government met its burden of showing effective consent. The officers and agents did not threaten Harrison's grandmother and she willingly agreed to the search and signed the consent forms. Although she testified that no one informed her of her right to refuse consent and she did not read the consent forms, the surrounding circumstances indicate that her consent was voluntary. Accordingly, the district court did not clearly err by finding that the consent was voluntary. See Kelley, 953 F.2d at 566 (housemate's consent was voluntary despite fact that fifteen minutes earlier armed FBI agent ordered her to lie prone on ground while her children were crying and running about nearby); see also Sealey, 830 F.2d at 1032 (district court properly discredited wife's testimony that the search proceeded for hours without her consent and that she was too tired to read consent form before signing).
 
 
 9
 Further, the third party consent to search was effective. Harrison's grandmother, as owner of the home, had joint access and control over his bedroom as evidenced by the absence of a lock, the open door, and the lack of any rent charge. Accordingly, she had common authority over the bedroom and could give effective consent to its search. See Kelly, 953 F.2d at 564 (housemate with authority to consent to search where she could enter defendant's bedroom to use telephone and doors to bedroom and closet were open); George, 883 F.2d at 1417 (wife with common authority over husband's apartment and car); Sealey, 830 F.2d at 1031 (even though wife needed husband's permission to enter the garage, her consent to search was valid where she had mutual access to entire premises based upon her 50% ownership of the home); cf. United States v. Warner, 843 F.2d 401, 403 (9th Cir.1988) (landlord with limited right of access cannot give consent to search tenant's apartment).[1]
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In its brief, the government adopts the district court's conclusion that even if the consent to search was invalid, the seized evidence was "inevitably discoverable" because the officers could have obtained a search warrant. We note that the inevitable discovery doctrine applies to situations where illegally seized information or evidence would have been obtained from another source and does not validate all warrantless searches where the officers could have obtained a search warrant. See e.g., United States v. Ramirez-Sandoval, 872 F.2d 1392, 1400 (9th Cir.1989)