12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Eugene YERGER, Defendant-Appellant.
 No. 92-50042.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided Nov. 16, 1993.
 
 Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Richard Eugene Yerger ("Yerger") was convicted of conspiracy to possess with intent to distribute marijuana and aiding and abetting possession with the intent to distribute marijuana after law enforcement officials discovered an underground marijuana plantation in a house he built.
 
 
 3
 Sheriff's deputies discovered the operation after an exhaustive search of Yerger's business records, purportedly undertaken pursuant to consent, turned up the address of the house. The critical issue before us is whether the warrantless consent search of Yerger's papers exceeded the scope of the consent given. Because we conclude that the district court erred by not applying the test recently set forth in Florida v. Jimeno, 111 S.Ct. 1801 (1991), we reverse and remand.
 
 
 4
 * Background
 
 
 5
 Prior to the events in this case, a Drug Enforcement Agency investigation in Arizona turned up more than 15,000 marijuana plants and a sophisticated cultivation operation. That investigation yielded mail addressed to Richard F. Yerger, the son of defendant-appellant Richard Eugene Yerger, at an address on Avenue E in Lancaster, California (the "Avenue E" house). Upon investigating the Avenue E house, sheriff's deputies seized more than 8,000 marijuana plants from an underground plantation. The tenants of the house told officers they were renting it from Richard Yerger.
 
 
 6
 Because the police recognized the name Richard Yerger from an unrelated investigation involving the elder Yerger, two officers subsequently went to Yerger's home to locate the Richard Yerger named on the Avenue E house utility bills. Yerger's domestic partner Sharyn Stewart was at home, but Yerger was not. She gave the officers oral permission to "look around" the house and later signed a written consent to search the house for "narcotics, weapons & paper work relating to narcotics transactions."
 
 
 7
 During the course of the search, the officers inspected numerous file cabinets containing Yerger's private business records. There, the officers found the address of a house Yerger had built in Llano, California on Largo Vista Road (the "Largo Vista house"). Because the officers knew Largo Vista to be a remote and isolated spot, they suspected the Largo Vista house could contain a marijuana plantation.
 
 
 8
 The next day, two officers drove to Llano to investigate the Largo Vista house. Their visual inspection revealed that the house had the same characteristics as the Avenue E house. Specifically, it was surrounded by a chain link fence, had a large outdoor shed, had a large fuel tank with copper tubing running from the tank into the shed, had several water tanks, had a generator, and had air shafts in the ground separated by cement blocks with bales of hay placed in between them.
 
 
 9
 The officers entered the house under "exigent circumstances," conducted a protective sweep, and found numerous marijuana plants. The officers left to obtain a search warrant for both Yerger's home and the Largo Vista house. During the subsequent warrant searches, they seized some 6,000 documents from Yerger's home and roughly 4,000 marijuana plants and equipment used in the cultivation operation from the Largo Vista house.
 
 
 10
 Yerger was indicted for conspiracy to possess marijuana with intent to distribute, and aiding and abetting possession of marijuana with intent to distribute. The jury convicted Yerger on both counts, and the district court sentenced Yerger to 151 months imprisonment. Yerger appeals the denial of his motion to suppress the evidence seized from both locations on various grounds, as well as several evidentiary rulings by the district court.
 
 
 11
 Yerger's primary contention is that the initial consensual search of his home exceeded the scope of Stewart's consent to search. He also claims there was no probable cause to search the Largo Vista house, that no exigent circumstances justified the initial warrantless search of the Largo Vista house, and that the subsequent search and seizure in his home pursuant to a search warrant exceeded the scope of the warrant. Because we hold that the district court erred by failing to apply the proper test to determine the scope of Stewart's consent, we do not reach the other issues. We see no merit to Yerger's evidentiary objections.
 
 II
 Standard of Review
 
 12
 Although the district court found that Ms. Stewart consented to all the observations made during the search, it made no findings of fact supporting this conclusion nor did it identify the legal standard it applied to reach this result. The scope of the actual consent given for a search is a factual matter to be determined in light of the totality of the circumstances, and will not be reversed unless clearly erroneous. United States v. Sealey, 830 F.2d 1028, 1032 (9th Cir.1987). The "clearly erroneous" standard does not, however, inhibit an appellate court's power to correct errors of law, including those that may infect a finding of fact predicated on a misapprehension of applicable legal principles. Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485, 501 & n. 17 (1984); Gomez v. City of Watsonville, 863 F.2d 1407, 1411 (9th Cir.1988), cert. denied, 489 U.S. 1080 (1989).
 
 III
 The Scope of the Consent
 
 13
 Officers may search without a warrant when they obtain the voluntary consent of a party with common authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 179, 181 (1990). The extent of the search, however, must be confined to the terms of the consent given. Sealey, 830 F.2d at 1032. The scope of the consent limits the scope of a permissible search in the same manner as the specifications in a warrant. United States v. Strickland, 902 F.2d 937, 941 (11th Cir.1990).
 
 A. Florida v. Jimeno
 
 14
 Because the initial search of Yerger's residence yielded the Largo Vista address which gave rise to all of the other searches and seizures, the critical issue in this case is whether the officers exceeded the scope of Stewart's consent. Unfortunately, the record is silent as to the legal standard the district court employed in finding that Stewart consented to the search that occurred. Although the court ruled in July 1991, it does not appear to have been aware of Florida v. Jimeno, which was decided May 23, 1991. Neither Yerger nor the government brought this case to the court's attention. The district court's finding that Stewart voluntarily consented to a search is undisputed. The court's failure to apply the Jimeno test, however, leaves essentially unsupported its conclusion that Stewart's consent extended to all the observations the officers made.
 
 
 15
 "The scope of a search is generally defined by its expressed object." Florida v. Jimeno, 111 S.Ct. at 1804 (citing Rodriguez, 497 U.S. at 184-86); United States v. Gutierrez-Mederos, 965 F.2d 800, 803 (9th Cir.1992) (citing Jimeno ), cert. denied, 113 S.Ct. 1315 (1993). The standard to be applied in ascertaining the scope of the consent given is one of objective reasonableness--"what would the typical reasonable person have understood by the exchange between the officer and the [person consenting]?" Jimeno, 111 S.Ct. at 1803-04; Gutierrez-Mederos, 965 F.2d at 803.
 
 
 16
 The district court never made the critical determination of whether Stewart would have reasonably understood her consent to extend to the search conducted. Because the scope of consent is a factual determination, we think it more appropriate to remand for an application of Jimeno to the facts of this case by the district court than to engage in our own fact-finding.
 
 B. Plain View
 
 17
 The government claims, and the district court found, that any documents searched that fell outside the scope of the consent given were in the officers' plain view while searching, and their criminal character was immediately apparent to the officers.
 
 
 18
 Expanding the scope of a lawful search is permissible only where it is immediately apparent that criminal evidence is in view; " 'the 'plain-view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.' " Arizona v. Hicks, 480 U.S. 321, 328 (1987) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971) (Stewart, J., concurring)). Under the plain view doctrine, therefore, "[m]erely inspecting" the visible portions of filing cabinets and file folders that come into view during a permitted search is not an independent search, but "taking action ... which expose[ ] to view concealed portions" of the file folders and their contents constitutes an unauthorized invasion of privacy. Id. at 325 (quotation omitted).
 
 
 19
 As the officers knew nothing whatsoever about the nature of the Largo Vista house at the time at the time of the search, they cannot claim that its criminal character justified their conduct in scrutinizing records pertaining to septic tanks, electrical work, insurance, draperies, and roofing. Nor can it be said that the search was only a cursory inspection. A "cursory inspection" is one that involves "merely looking at what is already exposed to view, without disturbing it." Id. at 328.
 
 
 20
 If the scope of the search involved an examination of documents outside the scope of consent, the officers would have needed probable cause to believe the documents examined were evidence or instrumentalities of a crime in order to justify their scrutiny under the plain view doctrine. Id. at 326. The government does not contend that probable cause existed before the officers inspected the Largo Vista property. Consequently, if the search exceeded Stewart's consent, it cannot be defended under the plain view doctrine.
 
 C. Remedy
 
 21
 Evidence within the scope of a valid consent need not always be suppressed simply because other items outside the scope were unlawfully seized as well. Cf. United States v. Tamura, 694 F.2d 591, 597 (9th Cir.1982) (evidence exceeding scope of valid warrant does not compel suppression of evidence lawfully seized pursuant to warrant). "[I]n cases where there is a flagrant disregard for the terms of the warrant" or the consent, "the district court may suppress all of the evidence, including evidence that was not tainted by the violation," United States v. Chen, 979 F.2d 714, 717 (9th Cir.1992), but "incidental" excesses require suppression of only the items not lawfully subject to search and seizure.
 
 
 22
 Therefore, if, after applying Jimeno, the district court determines that the government exceeded the scope of Stewart's consent, it will need to decide whether the search conducted fell more on the side of an exploratory foray or on the "incidental oversight" side of the line.
 
 CONCLUSION
 
 23
 Because the district court erred by failing to apply Florida v. Jimeno, we reverse the order denying the motion to suppress, vacate the judgment of conviction, and remand for an application of Jimeno and further proceedings consistent with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3