35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kim Sieng KHIM, Defendant-Appellant.
 No. 93-30386.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Sept. 9, 1994.
 
 1
 Before: TANG and WIGGINS, Circuit Judges, and HENDERSON,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Kim Sieng Khim appeals his conviction and sentencing for possession of an unregistered firearm in violation of 26 U.S.C. Secs. 5861(d) and 5871. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 On the evening of June 29, 1992, Kim Sieng Khim and five companions stole a Buick and a Toyota Camry in Stockton, California. Khim and his companions then drove to Portland, Oregon in the Toyota so Khim could visit his girlfriend.
 
 
 5
 In the Toyota were two handguns and two shotguns. Two of Khim's companions testified that Khim fired one of the shotguns from the Toyota on the way to Portland. Because Khim's girlfriend was not at home, the group began to drive back to Stockton. At about 4:00 p.m. on June 30, 1992, in Salem, Oregon, the group became involved in an altercation with the driver of a pickup who called Khim and his friends "Asian gooks." In response, Khim's companion, Vannack Van Chheun ("Short Dog") fired two or three rounds from one of the handguns out of the rear passenger window at the other vehicle.
 
 
 6
 Responding to the shooting, police conducted a "high risk felony stop" and discovered the guns in the Toyota. The gun charged in this case was one of the shotguns, a loaded 20 gauge pistol-grip pump, with a sawed-off barrel less than 18 inches. When subsequently questioned by two different detectives, Khim waived his Miranda rights, confessed that the Toyota and Buick were stolen, and confessed that he had purchased the two shotguns.
 
 
 7
 Khim was initially charged in Oregon state court with unauthorized use of a motor vehicle and illegal possession of a gun. After posting $3,000 bail, he was released. When he failed to appear, an arrest warrant was issued and the bail was forfeited. On February 9, 1993, a federal grand jury indicted Khim for possessing an unregistered firearm in violation of Title 26, United States Code, Secs. 5861(d) and 5871. On May 28, 1993, Khim was arrested in California. He pled not guilty to the federal charges on June 18, 1993.
 
 
 8
 On July 27, 1993, the district court, Judge Owen M. Panner presiding, heard and denied Khim's motion to suppress statements made to the detectives. On August 10, 1993, the district court heard defendant's pretrial motions to exclude evidence of prior bad acts. The motions were granted in part and denied in part. Evidence ruled admissible included Khim's participation in stealing the Buick and the Toyota and that "Short Dog" had shot the handgun before the group was stopped in Salem.
 
 
 9
 The trial proceeded with only one disputed element, whether Khim possessed the shotgun. When the government rested on August 12, 1993, defendant renewed the motion to suppress statements, which the Court denied.
 
 
 10
 On August 13, 1993, the jury found Khim guilty of possession of an unregistered firearm in violation of 26 U.S.C. Secs. 5861(d) and 5871. Khim's sentencing range was 33-41 months based on a total offense level of 20 and a criminal history category of 1. Level 20 included a two level increase for obstruction of justice under U.S.S.G. Sec. 3C1.1. The court denied Khim an acceptance of responsibility adjustment under U.S.S.G. Sec. 3E1.1, and sentenced him to a term of 33 months on October 12, 1993. Khim timely appeals, on five separate grounds. We have jurisdiction under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742(a).
 
 DISCUSSION
 
 11
 I. Denial of Substitution of Alternate Juror
 
 
 12
 Khim first claims that the district court erred by refusing to substitute an alternate juror. Just before opening statements in the trial, and after the jury had been sworn, Khim's attorney reported to the Court that a marshal had told him that a juror "may have" observed Khim wearing handcuffs. The trial judge found that the incident was not significant and denied defendant's request to substitute the juror. The district court's decision whether to replace a juror with an alternate is reviewed for abuse of discretion. United States v. Mullins, 992 F.2d 1472, 1478 (9th Cir.), cert. denied, 113 S.Ct. 2997 (1993).
 
 
 13
 The district court did not abuse its discretion in denying Khim the requested substitution. When the jury's view of a defendant in restraints is brief or inadvertent, the defendant must make an affirmative showing of prejudice. Wilson v. McCarthy, 770 F.2d 1482 (9th Cir.1985). Defendant made no such showing; in fact, defendant presents no evidence that any juror actually saw Khim in handcuffs. Without such evidence, defendant's claim has no basis.
 
 
 14
 II. Admission of Evidence as to Shooting and Stolen Cars
 
 
 15
 Khim next claims that the district court improperly admitted evidence that "Short Dog" fired a gun at another vehicle and that Khim stole two cars, because the district court did not adequately weigh the prejudicial effect of this evidence. The district court's balancing of probative value against prejudicial effect under Rule 403, Fed.R.Evid., is reviewed for abuse of discretion. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1991). Whether evidence constitutes "other crimes" evidence within the meaning of Rule 404(b) is reviewed de novo. United States v. Soliman, 813 F.2d 277, 278 (9th Cir.1987).
 
 
 16
 This Circuit has adopted the rule that evidence should not be considered "other crimes" evidence when "the evidence concerning the ['other'] act and the evidence concerning the crimes charged are inextricably intertwined." United States v. Williams, 989 F.2d 1061 (9th Cir.1993). This rule is premised on the idea that the policies underlying Rule 404(b), Fed.R.Evid., are inapplicable when offenses committed as part of a "single criminal episode" become other acts simply because the defendant "is indicted for less than all of his actions." Id. Because the evidence at issue constitutes part of a "single criminal episode," we need not reach defendant's allegation that it was improperly admitted as "other crimes" evidence.
 
 
 17
 The shooting by "Short Dog" and the stolen cars were part of a "single criminal episode" which involved Khim and his companions arming themselves with guns, stealing cars to travel from California to Oregon to see defendant's girlfriend, carrying the guns in the stolen cars, and discharging the guns along the way. See United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993) (testimony as to earlier cocaine transactions, which showed usual mode of business and explained where codefendants met, inextricable from and provided necessary context to charged conduct). The shooting and the stolen cars were inextricable from, and provided necessary context for, proof that Khim possessed the gun.
 
 
 18
 Further, the trial judge did not abuse his discretion in balancing the prejudicial and probative effect of this evidence. While the evidence as to stolen cars and the shooting by "Short Dog" was prejudicial to Khim, it was also highly probative to show a joint venture involving--and thus constructive possession over--the sawed-off shotgun. "Possession" that is necessary to establish defendant's gun possession offense under 26 U.S.C. Sec. 5861(d) may be proven by "constructive or joint possession." United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989) (citing United States v. Soso, 779 F.2d 558, 560 (9th Cir.1986)). " '[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or themselves, or the premises in which the contraband is concealed." Shirley, 884 F.2d at 1134 (quoting United States v. Ferg, 504 F.2d 914 (9th Cir.1974)). Constructive possession may also be shown by proof that the defendant participated in a joint venture, and thus shared dominion and control over the contraband. United States v. Hernandez, 876 F.2d 774 (9th Cir.), cert. denied, 110 S.Ct. 179 (1989).
 
 
 19
 Khim lastly asserts that it was erroneous for the district court not to give a cautionary instruction on the limited use of Rule 404(b) evidence. However, defense counsel did not ask for a limiting instruction, and the failure of a trial court to give such an instruction sua sponte is not reversible error. United States v. Multi-Management, Inc., 743 F.2d 1359, 1364 (9th Cir.1984).
 
 III. Waiver of Miranda Rights and Confession
 
 20
 Khim next challenges the district court's determination that he waived his Miranda rights and voluntarily confessed, and contends the district court therefore erred in refusing to suppress statements he made to the detectives who interviewed him. The district court's finding that a waiver of Miranda rights was knowing and intelligent is a factual finding entitled to a presumption of correctness, and is reviewed for clear error. Collazo v. Estelle, 940 F.2d 411, 415-416 (9th Cir.) (en banc ), cert. denied, 112 S.Ct. 870 (1991). The voluntariness of a waiver of Miranda rights, as well as a confession, is reviewed de novo. Id. Historical or subsidiary findings of the district court, such as whether police made alleged threats, are reviewed for clear error. Id.
 
 
 21
 "Voluntariness" and "knowing and intelligent" are two distinct considerations to be analyzed separately in determining whether a Miranda waiver was coerced. Colorado v. Spring, 479 U.S. 564 (1987). In evaluating the "voluntariness" of a confession, we examine, considering the totality of the circumstances, whether "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988). Personal circumstances are constitutionally irrelevant absent proof of coercion. Derrick v. Peterson, 924 F.2d 813, 818 (9th Cir.1990), cert. denied, 112 S.Ct. 161 (1991). The question of "voluntariness" of a Miranda waiver involves the same inquiry. Colorado v. Connelly, 479 U.S. 157, 169-170 (1986). A waiver is "knowing and intelligent" if it is made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).
 
 
 22
 Khim alleges (1) that the failure to require an express waiver of rights was erroneous; (2) that his Miranda waiver was not knowing and intelligent; (3) that his Miranda waiver and confession were not voluntary; and (4) that the district court erred in leaving for the jury the question of whether defendant's Miranda waiver was knowing and intelligent.
 
 1. Failure to Require an Express Waiver
 
 23
 Defendant first argues that the failure to require an express waiver was erroneous. In North Carolina v. Butler, 441 U.S. 369 (1979), the Supreme Court determined that a waiver of Miranda rights need not be express: "[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." 441 U.S. at 373. When to infer such a waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Id. at 374-75.
 
 
 24
 The facts surrounding the implied waiver, as found by the district court, are as follows: after Khim was detained in the police station for two hours, Detective Roberts read Khim his Miranda rights verbatim from a card and marked an "x" aside each one as he read. He then asked whether Khim understood these rights. Khim answered "yes." Roberts then asked whether Khim had any questions about his rights. Khim answered "no." Khim then signed the card. Roberts then interviewed Khim for thirty minutes, taking notes for twenty minutes and taping the remainder. At the outset of the recording, Roberts confirmed that Miranda rights were read and that Khim understood them.
 
 
 25
 Khim contends that he is an "alien" with an utterly different cultural background, with no mastery of English, and with no contact with the criminal justice system. In United States v. Bautisa Avila, 6 F.3d 1360 (9th Cir.1993), the defendant offered testimony that he had no prior experience with the American judicial system, that he had only a sixth grade Mexican education, had been a manual laborer all his life, and therefore experienced "almost an impossibility to grasp abstractions." 6 F.3d at 1365. The Ninth Circuit held that these circumstances did not vitiate the defendant's implied Miranda waiver, especially because the defendant indicated that he understood his rights after they were explained to him. Id. at 1366. See also, United States v. Bernard S., 795 F.2d 749, 752 (9th Cir.1986) ("Most importantly, after Bedford explained each of his rights to him in English, appellant stated that he understood his rights."). Here, Khim indicated that he understood his rights after they were explained to him by Detective Roberts. Further, defendant's high school English teacher testified that he was a fluent English speaker when in her class in 1990-91. Lastly, an examination of the transcript of the recorded portion of the interview shows a complete comprehension and ability to communicate by defendant. The district court did not err in not requiring an express waiver.
 
 
 26
 2. Was the Waiver Knowing and Intelligent?
 
 
 27
 Khim next contends that his Miranda waiver was not knowing and intelligent. The district judge found that Khim is "a very bright young man and that he responds very well and understands much better than he describes," and that Khim sufficiently understood the waiver. Again, a review of the transcript of the tape recorded portion of Detective Roberts' interview of Khim indicates no confusion on Khim's part and no misunderstanding of Roberts' questions. The trial judge did not clearly err in finding Khim's waiver to be knowing and intelligent.
 
 
 28
 3. Were the Waiver and Confession Voluntary?
 
 
 29
 Khim also contends that his waiver and subsequent confession were not voluntary. As evidence of coercion and intimidation, Khim points to the disparate sizes of Khim and Detective Roberts; the passivity of Khim's voice on the recorded portion of the interviews; the testimony of two companions who felt "intimidated" or "pressured" by Detective Roberts; and Khim's testimony that when he was ordered out of the Toyota during the stop an officer threatened, "you better cooperate or we put a hole through your body."
 
 
 30
 In examining the totality of the circumstances, the record shows that the trial judge correctly found that defendant's Miranda waiver and confession were voluntary. Khim was not handcuffed during his interviews. The detectives interviewing Khim were unarmed and in plainclothes. An examination of the transcript of the tape-recorded portion of Detective Roberts' interview shows his questions to be polite and professional. The disparate sizes of Khim and Roberts, the feelings of Khim's companions, and the reported tone of Khim's voice do not amount to coercion. Further, "[w]hen findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings." United States v. Sealey, 830 F.2d 1028, 1032 (9th Cir.1987). The district judge explicitly disputed the credibility of Khim's description of the threat, and speculated that the comment was, "come out with your hands up, or we'll shoot." It was appropriate for the district court to make such a credibility finding. Sealey, 830 F.2d at 1032.
 
 
 31
 4. Was the Waiver Left to the Jury?
 
 
 32
 Lastly, Khim argues that, in denying defendant's renewed motion to suppress, the district court incorrectly left the issue of whether he knowingly and intelligently waived his Miranda rights for the jury to decide. However, defendant presents no evidence that the jury in fact considered the validity of the Miranda waiver at trial. We therefore assume that the trial judge correctly decided the issue of whether Khim knowingly and intelligently waived his Miranda rights.
 
 
 33
 IV. Increase of Offense Level for Obstruction of Justice
 
 
 34
 Khim further contends that the district court improperly increased his offense level under U.S.S.G. Sec. 3C1.1 for obstruction of justice. We disagree. The district court's determination that a defendant obstructed justice for purpose of an upward adjustment under Sec. 3C1.1 is reviewed de novo. United States v. Morales, 977 F.2d 1330, 1331 (9th Cir.1992), cert. denied, 113 S.Ct. 1399 (1993). The finding that particular conduct constitutes obstruction of justice is reviewed for clear error. Id.
 
 
 35
 Section 3C1.1 provides: "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. Sec. 3C1.1. The enhancement applies when a defendant "willfully fail[s] to appear, as ordered, for a judicial proceeding." U.S.S.G. Sec. 3C1.1, Application Note 3(e).
 
 
 36
 Khim first contends that an obstruction of justice argument cannot be based on his conduct in the state prosecution because that prosecution was "not the instant federal case." However, the Ninth Circuit has previously held that Sec. 3C1.1 of the Guidelines is not to be limited as defendant suggests. See United States v. Lato, 934 F.2d 1080, 1083 (9th Cir.1991) (obstruction of state investigation of particular activity for which defendant ultimately receives federal conviction can be considered for purposes of Sec. 3C1.1).
 
 
 37
 Citing no authority, Khim then argues that, because his failure to appear was prosecuted in state court after the instant trial, construing the Guidelines to allow enhancement in his case raises double jeopardy and due process concerns. However, "the double jeopardy provisions of the fifth amendment are not implicated by state and federal prosecutions even for identical offenses involving identical issues." United States v. Mikka, 586 F.2d 152, 154 (9th Cir.1978), cert. denied, 440 U.S. 921 (1979). The district court did not err in increasing Khim's offense level for obstruction of justice.
 
 
 38
 V. Denial of Downward Adjustment for Acceptance of Responsibility
 
 
 39
 Lastly, Khim argues that the district court improperly denied a downward adjustment of his offense level under U.S.S.G. Sec. 3E1.1 for acceptance of responsibility. The district court's finding that a defendant has not accepted responsibility for purpose of an offense level reduction under Sec. 3E1.1 is reviewed for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990).
 
 
 40
 The Guidelines provide a two level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. Sec. 3E1.1(a). A defendant is not required to plead guilty to obtain the reduction. U.S.S.G. Sec. 3E1.1, Commentary, n. 2. However, Sec. 3E1.1 is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential elements of guilt, is convicted, and only then admits guilt and expresses remorse." Id.
 
 
 41
 Khim contends that the district court clearly erred in denying a two level reduction of his offense level under Sec. 3E1.1(a) in basing its decision to deny the reduction on the fact that defendant had gone to trial. However, while a defendant is not required to plead guilty to obtain the reduction, only certain defendants who proceed to trial are entitled to the reduction. As clearly stated in U.S.S.G. Sec. 3E1.1 Commentary n. 2:
 
 
 42
 In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).
 
 
 43
 See also United States v. McKinney, 15 F.3d 849, 852-855 (9th Cir.1994) (unusual situation where defendant who proceeded to trial had clearly attempted to plead guilty but was rebuffed by trial judge). There is no evidence that the instant case qualifies as such a rare situation. The district court did not clearly err by denying an acceptance adjustment.
 
 CONCLUSION
 
 44
 For the foregoing reasons, the denial of substitution of an alternate juror, admission of evidence as to the shooting and stolen cars, denial of defendant's motions to suppress statements, increase in offense level for obstruction of justice, and denial of a downward adjustment for acceptance of responsibility are all AFFIRMED.
 
 
 45
 AFFIRMED.
 
 
 
 *
 Honorable Thelton E. Henderson, Chief District Judge, for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3